**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION**

CHRISTOPHER WAYNE HARRIS,    :
                                    :
        Plaintiff,               :
                                      :
v.                                    :      CASE NO.: 1:10-CV-99 (WLS)
                                    :
BRUCE GOURLEY,                :
                                    :
        Defendant.           :
_____:

## ORDER

      Presently pending before the Court are Defendant Bruce Gourley's Motion for Summary Judgment (Doc. 33) and Motion to Exclude "Expert" Testimony of Plaintiff (Doc. 35).  For the following reasons, Defendant's Motion for Summary Judgment (Doc. 33) and Motion to Exclude (Doc. 35) are **GRANTED**.

## PROCEDURAL HISTORY

      On February 1, 2010, Plaintiff Christopher Wayne Harris filed a Complaint in the Superior Court of Terrell County, Georgia, alleging state law claims for malicious prosecution, false arrest, and false imprisonment.  (Doc. 1-1.)  On June 29, 2010, he amended his Complaint to include claims for false arrest and malicious prosecution in violation of the Fourth Amendment under 42 U.S.C. § 1983.  (*Id.* at 75-77.)  Plaintiff named as a defendant in his Complaint Bruce Gourley, an arson investigator and canine handler for the Georgia Insurance and Safety Fire Commissioner's Office.  (*Id.*)  Defendant Gourley's duties include assisting county agencies in investigating cause and origin of fires and upon concluding criminal intent exists in connection with a fire and then pursuing criminal prosecutions on behalf of the agency.  Plaintiff alleges that

Defendant Gourley swore out two warrants against Plaintiff related to a fire at Plaintiff's residence in Dawson, Georgia, falsely accusing Plaintiff of arson and criminal damage to property in the second degree.  (*Id.*)  Plaintiff further alleges that Defendant Gourley falsely testified before the grand jury of Terrell County, Georgia, that Plaintiff committed those crimes.  (*Id.*)   The criminal prosecution was dismissed by order of *nolle prosequi* March 4, 2009, for lack of evidence to prosecute Plaintiff.  (*Id.*)

Defendant Gourley removed this case to this Court on July 29, 2010.[1]  (Doc. 1). On August 5, 2010, Defendant Gourley filed a Motion to Dismiss this matter. (Doc. 3.) On September 14, 2010, Plaintiff then moved to amend his Complaint to include additional factual support for his Section 1983 false arrest and malicious prosecution claims.  (Doc. 8.)  On January 14, 2011, the Court granted Plaintiff's Motion to Amend. (Doc. 16.)   On January 26, 2011, Defendant Gourley moved to dismiss Plaintiff's Amended Complaint.  (Doc. 17.)  The Court ultimately found that Plaintiff's malicious prosecution and false arrest claims under Section 1983 could proceed; the Court dismissed Plaintiff's state law claims for false arrest, false imprisonment, and malicious prosecution under the Georgia Tort Claims Act.  (Docs. 22, 29.)

On May 1, 2012, Defendant Gourley moved for summary judgment as to Plaintiff's remaining claims, *to wit*: false arrest and malicious prosecution under Section 1983.  (Doc. 33.)   Per Defendant Gourley, he is entitled to summary judgment because probable cause existed for the actions he took implicating Plaintiff, and even if it did not, he is still entitled to qualified immunity because the facts and circumstances are such that he reasonably could have believed that probable cause existed.  (*Id.*)  Plaintiff filed a

---

[1] A second defendant, Terrell County Sheriff John Bowens, settled the claims against him prior to removal and is no longer a party to this case.

brief in opposition to Defendant Gourley's Motion for Summary Judgment on May 24, 2012.  (Doc. 34.)  In support of his claims, Plaintiff proffered his own affidavit stating that the fire started in a ceiling fan.  (Doc. 34-1.)  On June 11, 2012, Defendant Gourley filed a reply in support of its motion for summary judgment.  (Doc. 36.)  Defendant Gourley also moved to exclude Plaintiff's "expert" testimony regarding the ceiling fan as the source of the fire.  (Doc. 35-1.)  Plaintiff did not file a response to this motion.  (*See* Docket.)  Defendant Gourley also waited until it filed its reply to file a Statement of Material Facts.  (Doc. 37.)  On March 11, 2013, the Court directed Plaintiff to file a responsive Statement of Material Facts.  (*See* Docket.)  Plaintiff filed his response to Defendant Gourley's Statement of Material Facts on March 18, 2013.  (Doc. 38.)  All of the briefing for Defendant's Motion for Summary Judgment and Motion to Exclude has now concluded, and the Court finds that Defendant's Motions are ripe for review.

## FACTUAL BACKGROUND

The following facts are derived from the Complaint (Docs. 1-1, 8); Defendant Gourley's Answer (Doc. 24); Defendant Gourley's Statement of Undisputed Facts (Doc. 37); and Plaintiff's Responsive Statement of Material Facts (Doc. 38), all of which were submitted pursuant to Local Rule 56[2]; and the record in this case.  Where relevant, the

---

[2] Local Rule 56 states:

> The movant for summary judgment under Rule 56 of the Federal Rules of Civil Procedure shall attach to the motion a separate and concise statement of the material facts to which the movant contends there is no genuine issue to be tried.  Each material fact shall be numbered separately.  Statements in the form of issues or legal conclusions (rather than material facts) will not be considered by the court.  Affidavits and the introductory portions of briefs do not constitute a statement of material facts.

> The respondent to a motion for summary judgment shall attach to the response a separate and concise statement of material facts, numbered separately, to which the respondent contends there exists a genuine issue to be tried. Response shall be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement which are not specifically controverted by the respondent in respondent's statement shall be deemed to have been admitted, unless otherwise

factual summary also contains undisputed and disputed facts derived from the pleadings, the discovery and disclosure materials on file, and any affidavits, all of which are construed in a light most favorable to Plaintiff as the nonmoving party.  See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); Fed. R. Civ. P. 56.

On or about January 20, 2008, there was a fire at Plaintiff's residence.  (Doc. 37 ¶ 5.)  Defendant Gourley investigated the fire.  (*Id.*)  Defendant Gourley obtained permission from Plaintiff and his estranged wife, Tammy Harris, who held title to the house, to enter and search the premises.  (*Id.* ¶ 6.)  In the master bedroom, where the fire damage was concentrated, Defendant Gourley states that he saw a burn pattern—an area of severely burnt materials indicating that the fire had burned more intensely in that location—on the floor at the foot of the bed.  (*Id.* ¶ 7.)  Per Defendant Gourley, burn patterns often indicate that a fire was deliberately started.  (*Id.*)  Cotton, Defendant Gourley's canine, who is trained to detect hydrocarbons, including acetones and alcohols, alerted Defendant Gourley to a possible accelerant on the floor at the foot of the bed in the area of the burn pattern.  (*Id.* ¶¶ 4, 8.)  Defendant Gourley gathered fire debris from this area and sent it to a GBI lab for analysis.  (*Id.* ¶ 8.)

Defendant Gourley then examined and evaluated multiple items to determine whether each item might have accidently caused the fire.  (*Id.* ¶ 9.)  He examined the ceiling fan, a space heater, and the electrical outlets.  (*Id.*)  Defendant Gourley states that he concluded that each was not the cause of the fire.  (*Id.*)  Gourley states that,

---

inappropriate. The response that a party has insufficient knowledge to admit or deny is not an acceptable response unless the party has complied with the provisions of Rule 56(f) of the Federal Rules of Civil Procedure.

All documents and other record materials relied upon by a party moving for or opposing a motion for summary judgment shall be clearly identified for the court. Where possible, dates, specific page numbers, and line numbers shall be given.

based on, among other things, the accelerant detection by Cotton, the burn pattern, and the elimination of potential accidental causes, he concluded that the fire was probably intentionally set.  (*Id.* ¶ 10.)  In considering who might have set the fire, Defendant Gourley states that he looked into which persons might have had access to the house. (*Id.* ¶ 11.)  The entry points to the house showed no signs of forced entry, according to Defendant Gourley's investigation.  (*Id.* ¶ 12.)  Plaintiff had reported opening locked doors to gain access to the house.  (*Id.*)  Therefore, Defendant Gourley stated that he focused on persons who had a key to the house. (*Id.*)  Plaintiff's estranged wife had a key to the house.  (*Id.* ¶ 13.)  She, however, had an alibi for the entire day, per Defendant Gourley.  (*Id.*)  Defendant Gourley concluded that this tended to exclude her as a suspect. (*Id.*)

Plaintiff, as the resident of the house, also had a key.  (*Id.* ¶ 14.)  Plaintiff informed Defendant Gourley that no one else had a key. (*Id.*)  As part of the investigation, Defendant Gourley and a local law enforcement officer, Otis Seamy, interviewed Plaintiff on more than one occasion.  (*Id.* ¶ 15.)  During these interviews, Defendant Gourley reports that Plaintiff's statements contained a number of inconsistencies or "red flags," that led Defendant Gourley to conclude that Plaintiff was not being entirely truthful.  (*Id.*)  These "red flags" included: 1) Plaintiff stated that he saw smoke in the front door area when he pulled up at the carport, though, per Defendant Gourley, the front door cannot be seen from there; 2) despite seeing/smelling smoke, Plaintiff called his friend/employee Billy Courter (twice), waited for Courter to arrive from miles away, went into the house, and removed a vehicle from the carport, all before calling 911; 3) Plaintiff claimed that he called Courter to bring a flashlight because the lights in the house were unexpectedly out, but Plaintiff is a former police

officer who should not have been afraid to enter a dark house, 4) Plaintiff (and Courter) kept trying to draw attention to the ceiling fan as the source of the fire, a common diversionary technique, and 5) Plaintiff claimed to have turned the space heater off, but the on/off switch was in the "on" position (although the heater automatically turned off because it was not in an upright position).  (Doc. 33-2 at 6, ¶ 17.)

Defendant Gourley also noted that, in one of the rooms of the house, Plaintiff's pool table was covered with plastic as if to protect it from damage.  (Doc. 37 ¶ 16.) Defendant Gourley thought that this was suspicious as an outsider arsonist would have had no motive to protect the pool table.  (*Id.*)  Additionally, in the six months prior to the fire at Plaintiff's residence, there were two fires whose origins could not be conclusively determined at properties owned by Plaintiff.  (*Id.* ¶ 17.)  The second fire, in December 2007, had resulted in a death.  (*Id.*)  Finally, according to the reports Defendant Gourley received, Plaintiff's associate Courter, who is a convicted felon, was at the scene of all three fires.  (*Id.*)

Based on information learned in the investigation, Defendant Gourley concluded that Plaintiff had multiple possible motives to start a fire, including marital and financial troubles and anger management issues.  (*Id.* ¶ 18.)  Based on this investigation, Defendant Gourley discussed the matter with Officer Seay, and they concluded that it was probable that Plaintiff had set the fire.  (*Id.* ¶ 19.)  Accordingly, on January 28, 2008, Defendant Gourley swore out affidavits seeking warrants for Plaintiff's arrest for (1) arson in the first degree, a violation of O.C.G.A. § 16-7-70; and (2) criminal damage to property in the second degree, a violation of O.C.G.A. § 16-7-23. (*Id.* ¶ 19; *see also* Doc. 1-2 at 10-13).  Specifically, the affidavits attached to the arrest warrant including the following statements of the offenses:

> **Arson 16-7-60:** Accused did unlawfully commit the offense of Arson in the First Degree by knowingly damaging the property of Farm Bureau who had interest by means of fire and without their permission. This being in violation of O.C.G.A. 16-7-70.
>
> **Criminal Damage to Property, 2nd Degree:** Accused did recklessly and intentionally by means of fire damage the property belonging to Tammy Harris and Farm Bureau. Value being over $500.00.

(Doc. 1-1 at 11, 13.)[3]

After Plaintiff was arrested, Defendant Gourley received the GBI lab report analyzing the fire debris. (Doc. 37 ¶ 21.) The report indicated that the test procedure "fail[ed] to reveal the presence of any ignitable liquids." (*Id.*) The report also indicated, however, that "[t]he procedure employed does not detect the presence of light volatiles such as certain alcohols and acetone." (*Id.*; Doc. 33-2 at 12-13.) While Defendant Gourley states that it was not irrelevant to him that the test failed to reveal the presence of any accelerant, he states that he "also concluded that the test did not meaningfully diminish the likelihood that the fire was the result of arson because the lab was unable to test for 'light volatiles such as certain alcohols and acetone.'" (Doc. 37 ¶ 22.) According to Defendant Gourley, the conclusion that he drew from the GBI report was that the lab was unable to test for a number of common, flammable, household items frequently used to start fires, including: lacquer, varnish, nail polish remover, antifreeze, windshield washer fluid, rubbing alcohol, paint thinner, and rubber cement. (*Id.*)

In April and May of 2008, after Plaintiff was arrested, Defendant Gourley prepared and then supplemented a report of the investigation. (*Id.* ¶ 23; Doc. 33-2 at 14-22.) Per Defendant Gourley, he believes that the report accurately summarizes his investigation. (Doc. 37 ¶ 23.) After Plaintiff was arrested, Defendant Gourley testified

---

[3] Defendant Gourley believed that Plaintiff's associate, Courter, may have also assisted Plaintiff in setting the fire. (Doc. 37 ¶ 20.) However, Defendant Gourley did not think that he had sufficient evidence to have him arrested and so did not swear out a warrant concerning him. (*Id.*)

before a Terrell County grand jury concerning the fire. (*Id.* ¶ 24.)  On June 2, 2008, the grand jury indicted Plaintiff on two counts: (1) arson in the first degree, and (2) criminal damage to property in the second degree.   (*Id.* ¶ 25; *see also* Doc. 1-2 at 14-16.) Defendant Gourley had no involvement in any post-arrest activities involving Plaintiff. (Doc. 37 ¶ 26.)   The criminal prosecution was dismissed by order of *nolle prosequi* March 4, 2009, for lack of evidence to prosecute Plaintiff.  (Doc. 1-1 at 17.)

## DISCUSSION

## I.   MOTION TO STRIKE

On June 11, 2012, Defendant moved to exclude Plaintiff's testimony regarding the "origin" of the fire.  (Doc. 35.)  In his affidavit, Plaintiff states that "[t]he fire started because an electrical circuit in the ceiling fan had shorted out."  (Doc. 34-1 at 2.)  In support of this statement, Plaintiff states that he "worked in construction, including building houses, remodeling houses, installing ceiling fans." (*Id.*)  Defendant contends that Plaintiff "is attempting to present himself as his own expert" via his proffer of these statements and any additional related statements.  (Doc. 35-1 at 1.)  Defendant objects to Plaintiff's submission of himself as an "expert" on the grounds that 1) Plaintiff was never disclosed as an expert during discovery and 2) Plaintiff has not shown that his testimony is admissible under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 n.7, 597 (1993).  Plaintiff did not file a response in opposition to Defendant's Motion to Exclude.

The Supreme Court made "abundantly clear" in *Daubert* that Rule 702 compels a District Court to perform the critical gatekeeping function concerning the admissibility of expert scientific evidence, and in *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999), that the Rule requires the same gatekeeping function when considering the

admissibility of technical expert evidence. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

The Eleventh Circuit instructs that the District Court's gatekeeping function "'inherently require[s] the trial court to conduct an exacting analysis' of the *foundations* of expert opinions to ensure they meet the standards for admissibility under Rule 702.'" *Id.* (quoting *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1257 (11th Cir. 2002)) (emphasis and alteration in original). Courts in the Eleventh Circuit "engage in a rigorous three-part inquiry" in determining the admissibility of expert testimony under Rule 702. *Frazier*, 387 F.3d at 1260. Trial courts must consider whether:

> (1) the expert is qualified to testify competently regarding the matters [s]he intends to address; (2) the methodology by which the expert reaches [her] conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand that evidence or to determine a fact in issue.

*Id.* (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998)).

The Eleventh Circuit further instructs that regardless of overlap among the three requirements of qualification, reliability, and helpfulness, "they remain distinct concepts and the courts must take care not to conflate them." *Id.* Furthermore, "[t]he burden of establishing qualification, reliability, and helpfulness rests on the proponent of the expert opinion." *Id.* Ultimately, the reliability inquiry must be tied to the particular facts of the case. *Kuhmo Tire Co.,* 526 U.S. at 150 (internal citations omitted). Equally important to the gate-keeping function is a determination of whether the proposed testimony is relevant. *Daubert,* 509 U.S. at 591. Relevant testimony is that testimony

that "logically advances a material aspect" of a party's case.  *Allison v. McGhan Medical Corp.,* 184 F.3d 1300, 1312 (11th Cir. 1999).

Under Federal Rule of Evidence 702, a witness may be qualified as an expert by reason of knowledge, skill, experience, training, or education.  Furthermore, "[d]isputes as to the strength of [a witness'] credentials, faults in his use of differential etiology as a methodology, or lack of textual authority for his opinion, go to the weight, not the admissibility, of his testimony." *McCurdy v. Ford Motor Co.*, No. 1:04-cv-155, 2006 WL 2793167, at *4 (M.D. Ga. Sept. 26, 2006) (quoting *McCullock v. H.B. Fuller Co.*, 61 F.3d 1038, 1044 (2d Cir. 1995)).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking [debatable] but admissible evidence." *Maiz v. Virani*, 253 F.3d 641, 666 (11th Cir. 2001).  The Court's role in addressing a *Daubert* motion "is not intended to supplant the adversary system or the role of the jury."  *Allison*, 184 F.3d at 1311.

As noted above, although Plaintiff has "technically" proffered himself as an expert, he has taken no steps to show that his expert testimony meets the requirement of *Daubert.*  The case law makes clear that it is the proponent of the expert testimony who "bears the burden of demonstrating that each of his proffered experts is qualified to render an expert opinion, that the opinion is reliable, and that the opinion would assist the trier of fact in resolving a disputed issue of material fact." *McDowell v. Brown*, 392 F.3d 1283, 1298 (11th Cir. 2004); *White v. Chicago Pneumatic Tool Co.*, 994 F. Supp. 1478, 1481 (S.D. Ga. 1998) ("The proponent[] of the evidence ha[s] the burden of proving admissibility of the testimony by a preponderance of the evidence . . . In order to prove admissibility of scientific evidence, the proponent must show that the proffered

evidence is "(1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.") (quoting *Daubert*, 509 U.S. at 592-93).  Plaintiff has merely informed the Court that he worked in construction previously.  This statement, without more, is insufficient to satisfy the *Daubert* inquiry.  Therefore, because Plaintiff has failed to make any showing on any of the *Daubert* factors, the Court grants Defendant's Motion.  Accordingly, for the purposes of summary judgment, the Court will disregard Plaintiff's statements regarding the ceiling fan as the origin of the fire.

## II.   MOTION FOR SUMMARY JUDGMENT

### A.   SUMMARY JUDGMENT STANDARD

Pursuant to Fed. R. Civ. P. 56, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Celotex Corp.*, 477 U.S. at 322.  An issue is "genuine" if the quantum and quality of proof necessary to support liability under the claim is raised.  *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997).  A fact is "material" if it hinges on the substantive law at issue and it might affect the outcome of the nonmoving party's claim.  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986); *see also Allen*, 121 F.3d at 646.

On a motion for summary judgment, the Court must view all the evidence and all factual inferences drawn therefrom in the light most favorable to the nonmoving party and determine whether that evidence could reasonably sustain a jury verdict.  *See Celotex Corp.*, 477 U.S. at 322-23.  The movant bears the initial burden of showing that there is no genuine issue of material fact.  *Id.* at 323.  The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by pointing out to

the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322-24. Once the movant has met his burden, the nonmoving party is required "to go beyond the pleadings" and identify "specific facts showing that there is a genuine issue for trial." *Id.* at 324. A judgment is appropriate "as a matter of law" when the nonmoving party has failed to meet its burden of persuading the Court on an essential element of the claim. *See Cleveland v. Policy Mgmt Sys. Corp.*, 526 U.S. 795, 804 (1999); *Celotex*, 477 U.S. at 323. To avoid summary judgment, the nonmoving party must do more than summarily deny the allegations or 'show that there is some metaphysical doubt as to the material facts." *Matsuhita Elec. Indus. Co. v. Zenith Radio Corp.*, 418 U.S. 574, 586 (1986).

**B.**     **Section 1983 Claims**

Defendant Gourley argues that Plaintiff's claims for false arrest and malicious prosecution fail because he had probable cause for the actions he took against Plaintiff. Defendant Gourley argues that, alternatively, even if he lacked probable cause for the actions he took, he is entitled to qualified immunity because the facts and circumstances are such that he reasonably could have believed that probable cause existed.

In opposition to Defendant's motion for summary judgment, Plaintiff argues that none of Defendant Gourley's suspicions, theories, and conjectures were supported by any evidence and thus, he did not have probable cause, arguable or actual, for his actions. The Court will address each of these contentions in turn.

**1.**     ***False Arrest***

Plaintiff alleges false arrest in violation of his Fourth Amendment rights, pursuant to 42 U.S.C. § 1983, against Defendant Gourley. An arrest made without probable cause violates the Fourth Amendment and provides a basis for a Section 1983

action. *Ortega v. Christian*, 85 F.3d 1521, 1525 (11th Cir. 1996).  Plaintiff has the burden of establishing the absence of probable cause to succeed on a § 1983 claim.  *Rankin v. Evans*, 133 F.3d 1425, 1436 (11th Cir. 1998).  Defeating a defendant officer's foundation for probable cause is a heavy burden for a Plaintiff.   The Supreme Court has found that "[p]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 245 n.13 (1983).

To determine if there was probable cause for the arrest, a Court assesses whether "the facts and circumstances within the officer's knowledge, of which he has reasonably trustworthy information, would cause a prudent person to believe, under the circumstances shown, that the suspect has committed or is committing an offense." *Ortega,* 85 F.3d at 1525.  "Probable cause does not require overwhelmingly convincing evidence, but only reasonably trustworthy information."  *Id.* (quotations and citations omitted).  Once established, the existence of probable cause for the arrest constitutes an absolute bar to a Section 1983 action for false arrest.  *Marx v. Gumbinner*, 905 F.2d 1503, 1505 (11th Cir. 1990); *see also Ortega,* 85 F.3d at 1525.

Where an officer is alleged to have made an arrest without probable cause, as is the case here, the officer "is entitled to qualified immunity if there was arguable probable cause for the arrest, which is a more lenient standard than probable cause." *Knight v. Jacobson*, 300 F.3d 1272, 1274 (11th Cir. 2002).  "Arguable probable cause exists 'where reasonable officers in the same circumstances and possessing the same knowledge as the Defendant could have believed that probable cause existed to arrest.'" *Scarbrough v. Myles*, 245 F.3d 1299, 1302 (11th Cir. 2001).  In assessing whether arguable probable cause exists, courts employ a totality-of-the-circumstances analysis.  *German v. Sosa*, 399 F. App'x 554, 555 (11th Cir. Oct. 12, 2010).  Important to note is

that, even a mistake in judgment is not sufficient to defeat the application of qualified immunity if the law enforcement official "reasonably but mistakenly conclude[d] that problem cause [was] present." *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997) (quoting *Hunter v. Bryant*, 502 U.S. 224, 228 (1991)).   "Thus, the qualified immunity standard is broad enough to cover some 'mistaken judgment,'" and it shields from liability 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 343 (1997)).

Plaintiff argues that Defendant Gourley lacked probable cause, both actual and arguable, because the arrest warrants he swore "were conclusory and stated no facts." (Doc. 34 at 3.)   Plaintiff argues that Defendant "had no evidence that Plaintiff committed any crime, including arson or criminal damage to property, when he swore out the warrants against Plaintiff."   This Court disagrees, and finds that a review of the evidence relied upon by Defendant Gourley demonstrates that probable cause existed for Plaintiff's arrest.

### Burn Pattern/Dog Alert

At the start of his physical investigation into the fire, in the master bedroom, where the fire damage was concentrated, Defendant Gourley saw a burn pattern on the floor at the foot of the bed.  (Doc. 37 ¶ 7.)  Per Defendant Gourley, burn patterns often indicate that a fire was deliberately started.  Plaintiff contends that there is a disputed issue of fact as to the presence of a burn pattern because he contends that there was no burn pattern at the foot of the bed.  (Doc. 38 ¶ 7.)  However, the presence or lack thereof of a burn pattern is not a subject that lends itself to Plaintiff's layman opinion.  Plaintiff cannot create a genuine issue of fact by offering testimony that he has not shown himself qualified to give.

Defendant Gourley also states that Cotton alerted him to a possible accelerant near the site of the burn pattern. (Doc. 37 ¶ 8.) Cotton is trained to detect hydrocarbons, including acetones and alcohols, liquids often used as accelerants in starting fires. (*Id.* ¶ 4.) Defendant Gourley states that Plaintiff has "repeatedly demonstrated her reliability in detecting hydrocarbons." (Doc. 33-1 at 8.) Although dog sniffs for possible accelerant do not constitute *substantive* evidence of the presence of an accelerant,[4] *see, e.g., Carr v. State*, 267 Ga. 701, 704-705 (1997), for the purpose of assessing probable cause, the Court finds that Defendant Gourley was not required to ignore Cotton's alert as part of his investigation, especially in light of the fact that the alert was given near the site of the burn pattern.[5]

### Elimination of Accidental Causes

The record also reflects that Defendant Gourley's investigation was not limited to the burn pattern and his canine's alert to a possible accelerant. Defendant Gourley also states that he examined and evaluated multiple items—including a ceiling fan, a space heater, and electrical outlets—and determined that none of these items was the cause of the fire. Defendant Gourley's supplemental report discusses in detail the reasons for

---

[4] The Court's inquiry at this stage is not concerned with whether there is evidence that might sustain a verdict; rather the Court's inquiry is limited to determining whether there was probable cause to support Defendant Gourley's arrest of Plaintiff for suspected arson.

[5] To show an absence of probable cause, Plaintiff points out that Defendant Gourley did not wait for the GBI lab results to confirm the presence of an accelerant before swearing out the warrants against Plaintiff. (Doc. 34 at 5.) First, as demonstrated below, Defendant Gourley considered evidence in addition to the burn pattern and dog sniff. Thus, the record does not reflect that the warrants were sworn out against Plaintiff solely on the dog sniff. Second, Plaintiff provides no support for the argument that an officer is required to wait for the results of a lab report before executing an arrest warrant. On the contrary, the proper inquiry is whether the facts known to the officer *at the time* of the arrest provide a basis for probable cause. *Case v. Eslinger*, 555 F.3d 1317, 1326-27 (11th Cir. 2009) ("A warrantless arrest without probable cause violates the Constitution and provides a basis for a section 1983 claim, but the existence of probable cause *at the time* of arrest . . . constitutes an absolute bar to a section 1983 action for false arrest.") Moreover, the fact that the lab result came back negative is not sufficient to upend the Court's probable cause finding. Importantly, the lab report specifically stated that it did not test for all of categories of substances for which Cotton is trained to detect. *See United States v. Quesada-Ramos*, 429 F. App'x 909, 913 (11th Cir. June 10, 2011) (finding that the district court did not err in allowing dog trainer to testify at trial "that his trained dog could detect accelerants not perceptible in a laboratory").

eliminating these items as the causes of the fire.[6]  (Doc. 33-2 at 20-21.)

In the master bedroom, Defendant Gourley states that he observed a burn pattern leading from the foot of the bed to an electric space heater lying flat on the floor. (*Id.* at 20.)  Defendant Gourley's examination revealed that the heater was in the "on" position.  (*Id.*)  However, when he picked the heater up, Defendant Gourley observed a clean protected area of the flooring carpet beneath the area where the heater was lying down.  (*Id.*)  He then concluded that this was evidence that the heater was off at the time of the fire.  (*Id.*)  He ultimately tested the heater and determined that when the heater is lying down, the heater elements automatically shut off, even if the heater is set to "on."[7] (*Id.*)

Next, Defendant Gourley also considered the ceiling fan that he found on top of the bed.  (*Id.* at 4, ¶ 11(a).)  Defendant Gourley noted that he assessed the ceiling area directly over the bed where the ceiling fan had been mounted to an electrical junction box.  (*Id.* at 21.)  Defendant Gourley noted that this examination did not exhibit any fire damage above the junction box; the fire damage was limited to the area of the ceiling joist where the junction box had been mounted.  (*Id.*)  Defendant then noted that the worst fire damage was at the bottom portion of the fan where the fan blades had been

---

[6] Plaintiff makes much ado about the fact that Defendant Gourley's supplemental report was not generated until almost four months after the fire. However, Plaintiff has provided no evidence to demonstrate that the information contained in Defendant Gourley's May 2008 report did not include facts known to Defendant Gourley at the time he swore out affidavits for Plaintiff's arrest in January 2008.  The belated memorializing of these facts in a report does not mean that they did not form the basis for Defendant Gourley's probable cause finding at the time of Plaintiff's arrest.

[7] Defendant Gourley ultimately concluded that he thought the heater was turned on and then turned over to "appear to be the ignition source." (Doc. 33-2 at 21.)  Plaintiff disputes this fact by stating that the heater "was most likely knocked over when the ceiling fan fell." (Doc. 34 at 5.)  First, Plaintiff cannot create a genuine issue of fact with speculation, *nonexpert* speculation at that. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005) ("[U]nsupported speculation ... does not meet a party's burden of producing some defense to a summary judgment motion. Speculation does not create a genuine issue of fact; instead, it creates a false issue, the demolition of which is a primary goal of summary judgment.") (additional citations omitted).  Second, the fact that Defendant Gourley states that he found the fan on the bed decreases the "probability" that the fan knocked over the space heater that was on the floor.

attached.  (*Id.*)  Per Defendant Gourley, this observation:

> [W]as indicative of the evidence [Defendant Gourley] would normally find
> when the fire originated from the floor or bed area below the fan and
> traveled upwards to the fan thus exhibiting worst fire damage to the
> bottom portion of the fan.  The fire would then continue to travel upwards
> and over the fan with light fire damage to the top portion of the fan.  As the
> fire continued to travel upwards it would then be seeking oxygen burning
> up and outwards as the fire was impinging the area of the electrical
> junction box the fire began to extend through the cracks around the
> junction box and began to burn the ceiling joist.  However the fire never
> extended into the attic area because of extinguishment.

(*Id.*)  Following these observations, Defendant Gourley concluded that:

> [I]f the fire had originated at the ceiling fan because of an electrical
> malfunction the fan and ceiling area at the junction box would have
> exhibited worst fire damage and the fire would have extended into the attic
> with light to moderate fire damage at the bed and floor area.

(*Id.*)  Defendant Gourley next examined the electrical outlet into which the space heater

was plugged.  (*Id.*)  Defendant Gourley noted that the electrical outlet appeared to have

been tampered with to make it appear as if it had malfunctioned and caused the fire.

(*Id.*)  However, because 1) Plaintiff and his employee stated that there was no power in

the structure when they entered, 2) the electrical cord of the heater was in good

condition, with the heater still operational, and 3) Plaintiff was able to turn the main

breaker back on to the get power, Defendant Gourley concluded that the electrical

system functioned as it was designed to.  (*Id.*)

Defendant Gourley next assessed an electric blanket laid over the foot of the bed.

(*Id.*)  Per his observation, the electric blanket was placed under the edge of the heater,

with the heater placed down to appear to be the ignition source of the fire.  (*Id.*)

However, because the heater automatically shut off, Defendant Gourley noted that it

was not the ignition source.  (*Id.*)  After making these observations, Defendant Gourley

was only able to conclude that "the fire originated within the area of the electric blanket

that was laid over the foot of the bed." (*Id.*)   Defendant Gourley did not indicate what caused the fire in this area.  (*Id.*)  Nevertheless, the supplemental report does indicate that Defendant Gourley considered the potential accidental causes of the fire as part of his investigation.

### Inconsistencies in Plaintiff's Story about the Night of the Fire

Defendant Gourley also relied on, as part of his probable cause finding, certain inconsistencies detected in Plaintiff's statement about the fire.  Specifically, Defendant Gourley noted that Plaintiff stated that he saw smoke in the front door area when he pulled up at the carport.  (Doc. 33-2 at 6, ¶ 17.)  Defendant Gourley notes, however, that the front door cannot be seen from the carport.  (*Id.*)  Defendant Gourley also notes that Plaintiff did not immediately call 911 to report the first, instead choosing to make two calls to his employee about the fire and waiting for the employee to arrive before he (Plaintiff) finally called 911.

As to the first inconsistency, Plaintiff disputes that he ever told Defendant Gourley that he saw smoke before he entered the house.  (Doc. 34-1 at 3.)  Plaintiff does not dispute the fact that he did not immediately call 911.  (*Id.* at 4.)  Even if the Court considers the issue regarding whether Plaintiff saw smoke to be "disputed," the Court finds that, when considered together, the burn pattern, Cotton's alert to an accelerant in the area of the burn pattern, the elimination of any accidental causes, and the delay in calling 911, all support a finding that probable cause existed for Plaintiff's arrest.

### Financial Motives

Moreover, Defendant Gourley considered Plaintiff's financial motives, a fact that Plaintiff has not sufficiently disputed.  In his affidavit, Defendant Gourley noted that Plaintiff and his wife Ms. Harris were divorcing, and Ms. Harris was expected to get title

to the house. (Doc. 33-2 at 7-8, ¶ 20(1).) Defendant Gourley also noted that the house was facing foreclosure because of Ms. Harris's bankruptcy and other financial difficulties. (*Id.*) Per Defendant Gourley, Plaintiff, who was experiencing financial difficulties, needed several thousand dollars to make the mortgage current, avoid foreclosure and possibly purchase the house back from Ms. Harris. (*Id.*) In response to these assertions, Plaintiff only states that Defendant Gourley was informed that he (Plaintiff) was to receive the home in the divorce settlement and that he (Plaintiff) "did not have financial troubles." (Doc. 38 at 6.) Plaintiff, however, does not respond to the most important assertion—that the house was facing foreclosure and that he needed money to avoid foreclosure and possibly purchase the house back from Ms. Harris. (*Id.*) Thus, Plaintiff has failed to "take the wind out of the sails" of Defendant Gourley's financial motive theory.

### *Unique Access to the House*

Finally, Defendant Gourley considered Plaintiff's unique access to the house. Although such a fact would be considered innocuous in most circumstances due to the fact that Plaintiff was the occupant of the home, in the face of possible evidence that a fire was intentionally set, the Court can see how lack of evidence of forced entry may increase the possibility that the owner of the house was "uniquely" positioned to commit the crime. The case of *Porter v. Gray*, No. 05-231, 2007 WL 464694, at *1 (W.D. Pa. Feb.1 3, 2007), is instructive on how "unique access" can provide the basis for probable cause in an arson arrest. In *Porter*, the Court found probable cause for plaintiff's arrest for arson, finding "[p]laintiff's access to the Property [to be] particularly significant in light of the fact that the fire originated inside the house, the Property was secure at the time the fire was discovered, and there were no signs of forced entry." Here, too, the

Court does not find that Defendant Gourley was required to completely ignore, as part of his investigation, the fact that the fire originated inside of the house, there was a lack of evidence showing that the fire was caused accidentally, there were no signs of forced entry to the house, and Plaintiff was one of only two individuals with a key to the house, the other key holder having an established alibi.

### Other Evidence

Though it does not change the Court's overall analysis of the presence of probable cause, the Court does note that it agrees with Plaintiff that some of Defendant Gourley's evidence of suspected arson—1) pool table (the Court agrees with Plaintiff that plastic over a pool table would serve as no protection in the event of a fire) and 2) two prior fires (there is *no* evidence to connect Plaintiff to these fires; in fact, the evidence indicates that the properties were occupied by tenants at the relevant times and that the first fire was caused by tenant-error and the second, by a short circuit in a tenant's dryer)—do not add to a finding of probable cause.  However, the Court does not find that these evidentiary concerns are of such significance that they outweigh the incriminating evidence.  *Porter*, 2007 WL 464694, at *17 (granting summary judgment in favor of arresting officer because "[t]he two most significant pieces of exculpatory information, . . . when weighed against the incriminating evidence, [did] not negate probable cause").  More to the point, the question is not whether all of Defendant's evidence points to probable cause but whether there is adequate evidence otherwise to support a finding of probable cause.

Accordingly, after reviewing the evidence, the Court cannot say that all other evidence, when considered together, leads to a finding that probable cause did not exist for Plaintiff's arrest.  *Dahl v. Holley*, 312 F.3d 1228, 1234 (11th Cir. 2002) ("[A]rresting

officers, in deciding whether probable cause exists, are not required to sift through conflicting evidence or resolve issues of credibility, so long as the totality of the circumstances present a sufficient basis for believing that an offense has been committed.")

That Defendant Gourley never precisely stated what he believes caused the fire also does not change the Court's finding.  (Doc. 34 at 5; *see also* Doc. 33-1 at 2.)  As the Court noted at the outset of its analysis, "probable cause requires only a probability or substantial chance of criminal activity, ***not an actual showing of such activity.***"  *Case*, 555 F.3d at 1327 (quoting *Illinois*, 462 U.S. at 245 n.13).  Here, Defendant Gourley has presented evidence to demonstrate that he relied on 1) the presence of a burn pattern, 2) an alert to a possible accelerant by a trained detection canine at the site of the burn pattern, 3) the elimination of potential accidental causes, and 4) Plaintiff's motives for setting the fire, as the foundation for his belief that there existed probable cause to arrest Plaintiff.  The Court finds that, even in the absence of the proverbial "smoking gun," i.e., an identifiable, conclusive cause of the fire, these factors are sufficient to support Defendant Gourley's conclusion that there was a "probability or substantial chance" that the fire was intentionally set.  In Georgia, circumstantial evidence can even sustain a conviction for arson.  *Carter v. State*, 237 Ga. App. 703, 706 (1999) (citing *Bragg v. state*, 175 Ga. App. 640, 641 (1985)); *see e.g., Walker v. State*, 193 Ga. App. 100, 100 (1989) (affirming arson conviction in case where an unusual burn pattern was detected, no source of ignition could be determined, and the burn materials tested by the lab failed to identify an accelerant).  The Court finds that it would be counterintuitive to conclude that an officer is not entitled to reasonably rely on circumstantial evidence, as shown here, in deciding whether to effectuate an arrest for

arson.

Accordingly, the Court finds that Plaintiff has failed to present evidence demonstrating that Investigator lacked probable cause to execute warrants for Plaintiff's arrest. Thus, the Court finds that Defendant is entitled to summary judgment as to Plaintiff's false arrest claim.[8]

### 2.   *Malicious Prosecution*

In his brief in opposition to summary judgment, Plaintiff does not address the argument that Defendant Gourley is entitled to summary judgment as to his malicious prosecution claim. Nevertheless, the Court agrees that this claim fails as a matter of law. To establish a federal malicious prosecution claim under § 1983, a Plaintiff must prove (1) the elements of the common law tort of malicious prosecution, and (2) a violation of his Fourth Amendment right to be free from unreasonable seizures. *Wood v. Kesler,* 323 F.3d 872, 881 (11th Cir.2003), *cert. denied,* 540 U.S. 879 (2003). The Georgia tort of malicious prosecution has the following elements: (1) prosecution for a criminal offense; (2) under a valid warrant or accusation or summons; (3) termination of the prosecution in favor of the Plaintiff; (4) malice in the institution and maintenance of the proceedings; (5) lack of probable cause for the proceedings; and (6) damage to the Plaintiff. *Commercial Plastics & Supply Corp. v. Molen,* 355 S.E.2d 86, 87 (Ga.App.1987).

Here, the only actions that involved Defendant Gourley post Plaintiff's arrest were Defendant Gourley's receipt of the lab results and Defendant Gourley's testimony before the grand jury. Regarding the latter, the Court has already determined that

---

[8] To be clear, though the Court is granting summary judgment on the more restrictive actual probable cause standard, Plaintiff's claim would still fail on qualified immunity grounds because, on these facts, Defendant Gourley could have reasonably believed that probable cause existed for arresting Plaintiff.

Defendant Gourley is immune from section 1983 liability regarding his testimony before the grand jury.  (Doc. 22 at 15 n.9.)  As to the receipt of the lab report, the Court has already concluded that the receipt of the negative lab results was not sufficient for negating the conclusion that there existed probable cause to arrest Plaintiff.  (*See id.* n.3.)  As an extension of this finding, the Court finds that Plaintiff has not shown that the negative test result were, *ipso facto*, sufficient to negate Defendant Gourley's probable cause for allowing the prosecution of Plaintiff to continue.

Defendant Gourley pointed out that the GBI lab report specifically stated that "[t]he procedure employed does not detect the presence of light volatiles such as certain alcohols and acetone"—substances the undisputed facts demonstrate that Cotton is trained to detect.  (Doc. 33-2 at 13; Doc. 37 ¶ 4.)  Therefore, although the report is not "irrelevant," as Defendant Gourley admits, the Court does not find that Plaintiff has met his burden of showing that the lab report sufficiently decreased the probable cause that was already in existence.  *See, e.g., Kjellsen v. Mills*, 517 F.3d 1232, 1238 (11th Cir. 2008) (concluding that DUI re-test results were insufficient to later negate initial probable cause for the purpose of stating a claim for malicious prosecution).  Not to mention, the fact that the grand jury returned the indictment even after the lab results tested negative for the accelerant is *prima facie* evidence that probable cause existed for the prosecution.  *Kelly v. Serna*, 87 F.3d 1235, 1241 (11th Cir. 1996).  As argued by Defendant Gourley, Plaintiff has failed to rebut this presumption.  Accordingly, Plaintiff has failed to show that there was a "lack of probable cause" for the continuation of his prosecution.  Therefore, Defendant Gourley is also entitled to summary judgment as to Plaintiff's malicious prosecution claim.

Simply put, Plaintiff has failed to present evidence showing that probable cause did not exist for the actions taken against him by Defendant Gourley.  Plaintiff has also failed to proffer any facts showing that his constitutional rights were violated.  Thus, at a minimum, Plaintiff has failed to sufficiently show that Defendant Gourley would not be entitled to qualified immunity as to any of his section 1983 claims.

**III.**   **CONCLUSION**

For the aforementioned reasons, Defendant's Motion to Exclude "Expert" Testimony of Plaintiff (Doc. 35) and Motion for Summary Judgment (Doc. 33) are **GRANTED**.  It is hereby **ORDERED AND ADJUDGED** that Plaintiff shall take nothing by his Complaint (Doc. 1), and **JUDGMENT** shall be entered in favor of Defendant.

**SO ORDERED**, this   27th   day of March, 2013.

/s/ W. Louis Sands
**THE HONORABLE W. LOUIS SANDS,**
**UNITED STATES DISTRICT COURT**